UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **PASTA FASTA SH. P. K.** | **CIV. ACTION NO. 3:25-00492** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **FASTA PASTA, L. L. C.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 20] filed by Defendant Fasta Pasta, L.L.C. The motion is opposed. For reasons detailed below, IT IS RECOMMENDED that the motion to dismiss be GRANTED.

## Procedural Background

On April 14, 2025, Pasta Fasta SH.P.K. ("Plaintiff") filed the instant Complaint against Fasta Pasta, L.L.C. ("Defendant") seeking monetary damages under federal law for false association and unfair competition in violation of §§ 43 and 44 of the Lanham Act, 15 U.S.C. §§ 1125(a) and 1126(g)-(h), respectively, and for unfair methods of competition and unjust enrichment pursuant to the Louisiana Unfair Trade Practices Act, Louisiana Revised Statutes §§ 51:1401, *et seq*. and Louisiana Civil Code Article 2298, respectively, combined with an associated request for declaratory and injunctive relief, all arising from Defendant's alleged attempts to misappropriate Plaintiff's brand and bar its entry into the United States market. (Compl., ¶ 1). Plaintiff invoked the Court's federal question jurisdiction, 28 U.S.C. § 1331, for its claims under the Lanham Act, and the Court's supplemental jurisdiction, 28 U.S.C. § 1367, for its state law claims. (Compl., ¶¶ 8-10).

After executing a waiver of service on April 28, 2025, and suffering a Clerk's entry of default on July 2, 2025, Defendant eventually made its formal debut in the case on July 17, 2025, by successfully petitioning the Court to set aside the default, thereby mooting Plaintiff's then-pending motion for default judgment. *See* July 22, 2025 Order [doc. # 19] and doc. #s 6, 11-12, 15-18.

On July 30, 2025, Defendant filed the instant Rule 12(b)(6) motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. (M/Dismiss [doc. # 20]).

On August 21, 2025, Plaintiff filed its response in opposition to the motion to dismiss. (Pl. Opp. [doc. # 22]). Defendant filed its reply brief on August 28, 2025. (Def. Reply [doc. # 23]).

Accordingly, the matter is ripe.

### **Rule 12(b)(6) Standard**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667-668 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *Iqbal,* 556 U.S. at 556. Plausibility simply calls for enough factual allegations to raise a reasonable expectation

2

that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679 (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556.

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal,* 556 U.S. at 678. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, Rule 12(b)(6) authorizes courts to dismiss a claim on the basis of a dispositive issue of law, notwithstanding that it otherwise might be well-pleaded. *See Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989) (citations omitted).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 530 (2011) (citation omitted). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*.

### **Plaintiff's Allegations**[1]

1.  Plaintiff is a Kosovo-based limited liability company that founded "PASTA FASTA," a European-based fast casual pasta restaurant chain that provides fresh, made-to-order pasta and offers a customizable experience. (Compl., ¶ 13).

2.  Since its inception in 2018, Plaintiff has used the "PASTA FASTA" mark to identify its goods and services and acquired registrations for its mark in North Macedonia, the Republic of Kosovo, Albania, the European Union, and the United Kingdom. *Id*., ¶¶ 14-17.

3.  Since 2018, Plaintiff's "PASTA FASTA" brand became increasingly popular, expanding to about ten franchise locations in Kosovo, Albania, Hungary, and Germany. *Id*., ¶¶ 19-20.

4.  In or about late 2022, Plaintiff began discussions with Rron and Ahmed Kurtolli regarding expanding the PASTA FASTA brand to the United States market. *Id*., ¶ 23.

5.  On or about January 12, 2023, Rron and Ahmed Kurtolli began taking affirmative steps to bring Plaintiff's PASTA FASTA brand into the United States market. *Id*., ¶ 24.

6.  On or about January 12, 2023, Rron and Ahmed formed PF USA, LLC ("PF USA"), which was previously named Kurtolli LLC, for the purpose of operating the PASTA FASTA restaurant in the United States. In February 2023, Kurtolli LLC was renamed "PASTA FASTA LLC", before it finally was renamed "PASTA FASTA USA, LLC," effective March 30, 2023. *Id*., ¶ 25 and Articles of Amendment, Compl., Exh. C.

7.  Thereafter, on an unspecified date in April 2023, Plaintiff entered into a franchise agreement with PF USA, granting the entity the sole and exclusive right to use and license to others, the PASTA FASTA mark. *Id*., ¶¶ 26-27.

---

[1] This summary tracks the Factual Background set forth in Plaintiff's Response. (Pl. Opp. Memo., pgs. 4-7).

8. After finalizing the franchise agreement, PF USA opened a "PASTA FASTA" restaurant at a Chicago, Illinois location and filed trademark applications seeking registration of the following marks:

| 9. Mark | Serial No. | Filing Date | Goods |
|---|---|---|---|
| [Pasta FASTA logo - black] | 98082571 | Jul. 12, 2023 | **Class 30:** Macaroni; Noodles; Pasta; Spaghetti; Macaroni with cheese; Pasta and noodles; Pasta sauce; Spaghetti sauce; Angel hair pasta; Angel-hair pasta; Fresh pasta; Gluten-free pasta; Prepared pasta |
| [Pasta FASTA logo - yellow] | 98072096 | Jul. 05, 2023 | **Class 30:** Macaroni; Noodles; Pasta; Spaghetti; Macaroni with cheese; Pasta and noodles; Pasta sauce; Spaghetti sauce; Fresh pasta; Prepared pasta |
| PASTA FASTA | 98067439 | June 30, 2023 | **Class 30:** Macaroni; Noodles; Pasta; Spaghetti; Pasta and noodles; Fresh pasta; Prepared pasta |

9. *Id.*, ¶ 29

10. Plaintiff discovered that on or about **April 17, 2023**, Defendant had filed U.S. Application Serial No. 97892006 for the "FASTA PASTA and Design" mark, seeking registration in International Class 43 for use in connection with "Fast-food restaurants; Restaurant; and Restaurant and café services. The application alleges a first use date of **March 1, 2023**. *Id.*, ¶ 31. Defendant currently uses the "FASTA PASTA and Design" mark in connection with the Fasta Pasta restaurant located at 1191 Lamy Lane, Suite 5, Monroe, Louisiana 71201. *Id.*, ¶ 32.

11. In addition to the application for "FASTA PASTA," Defendant also filed an intent-to-use based application, U.S. Application No. 97913861 for the "PASTA FASTA and Design" mark, which depicts a logo that is identical to the one used by Plaintiff. In the application, Defendant seeks registration of the identical mark in International Class 43 for use in connection with "Restaurant services; Restaurant and café services; Fast-food restaurant services." *Id.*, ¶ 33.

12. Plaintiff's trademark applications received Office Action refusals to register, based on a likelihood of confusion with the Defendant's applications. *Id.*, ¶ 30.

13. Upon discovering Defendant's applications, PF USA contacted the Defendant requesting that it cease and desist use of the "FASTA PASTA" mark and refrain from adopting the mark "PASTA FASTA" in connection with restaurant service, restaurant and café services, and fast-food restaurant services. *Id.*, ¶ 35.

5

14. In response, Defendant refused to cease and desist use of the "FASTA PASTA" mark, alleging that (1) Plaintiff does not have any trademark rights to the mark in the United States due to non-use in the United States, (2) Fasta Pasta has priority in the "FASTA PASTA" mark in the United States, based on its first use in commerce in the United States, and in the "PASTA FASTA" mark based on its prior application date, and (3) that PF USA's applications do not seek registration of the mark in connection with restaurant services, and are instead for food items, such as "Macaroni; Noodles; Pasta; Spaghetti; Pasta and noodles; Fresh pasta; Prepared pasta." *Id*., ¶ 36.

15. In addition, despite not using the "PASTA FASTA" mark, Defendant indicated that it had an intent to enter into franchise agreements and open restaurants in the United States under the "PASTA FASTA" name, rather than the "FASTA PASTA" name that it is currently using and instead demanded that Plaintiff and its related entity, PF USA, cease and desist all use of their marks in the United States market. *Id*., ¶ 37.

16. Thereafter, Plaintiff discovered that Defendant not only had planned to adopt an identical name to that used by the Plaintiff but also had appropriated images from Plaintiff and PF USA's online websites and social media accounts and used them for its own promotional material, simply photoshopping the "FASTA PASTA" logo on the same. *Id*.

## Analysis

As referenced earlier, Plaintiff listed four "Counts," i.e., grounds for relief, in its Complaint: (1) false association under § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (2) unfair competition under § 44 of the Lanham Act, 15 U.S.C. § 1126(g) and (h); (3) unfair methods of competition and trade practices pursuant to the Louisiana Unfair Trade Practices Act, Louisiana Revised Statute §§ 51:1401, *et seq*.; and (4) unjust enrichment under Louisiana Civil Code Article 2298. (Compl.). Defendant seeks dismissal of Plaintiff's Complaint as to all Counts. The Court first will address the sufficiency/viability of Plaintiff's claims under the Lanham Act before reaching its state law claims.

**I.    Lanham Act Claims**

Plaintiff contends that it sufficiently alleged claims of false association and unfair competition under §§ 43 and 44 of the Lanham Act. (Pl. Opp. Memo., pg. 9). The Court will consider each provision, in turn.

6

a) <u>Section 43</u>

"The Lanham Act was intended to make 'actionable the deceptive and misleading use of marks' and 'to protect persons engaged in . . . commerce against unfair competition.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767–68 (1992) (citation omitted). Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), creates two distinct bases of liability: false association § 1125(a)(1)(A), and false advertising § 1125(a)(1)(B). *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). Plaintiff seeks relief under the former provision, which reads,

> **(1)** [a]ny person who . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).

The Supreme Court has observed that § 43(a) protects qualifying unregistered trademarks and prohibits a broader range of practices than does § 32, which applies to registered marks. *Two Pesos, Inc.*, 505 U.S. at 768 (citation omitted). In fact, one need not even be the owner of a trademark to advance a claim under § 43(a). *Exxon Corp. v. Humble Expl. Co., Inc.*, 695 F.2d 96, 103 (5th Cir. 1983) (citation omitted). Moreover, "[s]ection 43(a) of the Lanham Act has been characterized as a remedial statute that should be broadly construed." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 (5th Cir. 1996) (citation omitted). Nonetheless, "§ 43(a)

7

does not have boundless application as a remedy for unfair trade practices . . ." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 30 (2003) (citation and internal quotation marks omitted).

In its brief, Plaintiff acknowledges that, to establish a claim for false association under Section 43(a)(1)(A), it must prove that (1) it has *prior* protectable rights in a registered or unregistered mark and (2) the defendant's use of a similar mark is likely to cause confusion. (Pl. Opp. Memo., pg. 9) (emphasis added). Furthermore, courts agree that, to prevail under § 43(a), "a claimant must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citations omitted); *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007), *certified question answered,* 9 N.Y.3d 467; 880 N.E.2d 852 (2007) (as a preliminary matter, a plaintiff asserting a 43(a)(1)(A) claim must demonstrate its own right to use the mark or dress in question); *Sadhu Singh Hamdad Tr. v. Ajit Newspaper Advert., Mktg. & Commc'ns, Inc.*, 04 CV 3503 (CLP), 2007 WL 9710240, at *7 (E.D.N.Y. Apr. 5, 2007), *aff'd.*, 394 Fed. App'x. 735 (2d Cir. 2010) (plaintiff must show priority of right over defendants).

However, "[t]he concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme." *Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir. 1985) (citations omitted). Under the territoriality doctrine, "a trademark is recognized as having a separate existence in each sovereign territory in which it is registered or legally recognized as a mark." *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 426 (2023) (citing J. Thomas McCarthy, 4

McCarthy on Trademarks and Unfair Competition (hereinafter, "McCarthy") § 29:1 (5th ed. 2022)).  Importantly, "[t]he territoriality principle requires the use to be in the United States for the owner to assert priority rights to the mark under the Lanham Act."  *ITC Ltd.*, 482 F.3d at 155-156 (citation omitted).  Therefore, "absent some use of its mark in the United States, a foreign mark holder generally may not assert priority rights under federal law, even if a United States competitor has knowingly appropriated that mark for his own use."  *Id*. (citing *Person's Co. v. Christman, Ltd. v. Christman*, 900 F.2d 1565, 1569-70 (Fed. Cir. 1990)).[2]  Ultimately, "[p]rior use in a foreign nation does not establish priority of use in America."  McCarthy § 29:2.[3]

---

[2] The Federal Circuit recently recounted the circumstances of its decision in *Person's*:

> Person's was a well-known retailer in Japan.  Christman, a U.S. citizen, began producing goods bearing the Person's mark in the United States and subsequently registered the mark in the United States.  Thereafter, the Japanese owner of the PERSON'S mark in Japan began to expand its brand into the U.S. market, discovered consumer confusion with Christman's products bearing the same mark, and filed a claim for cancellation of Christman's registration, claiming priority.  The Board granted summary judgment for Christman, and this court affirmed.

> The court noted there was "no evidence to suggest that the 'PERSON'S' mark had acquired any notoriety in this country at the time of its adoption by Christman" such that Person's "had no reputation or goodwill upon which Christman could have intended to trade."  And the court confirmed that "when Christman initiated use of the mark," Person's "had not yet entered U.S. commerce," "had no goodwill in the United States[,] and the 'PERSON'S' mark had no reputation here."  Thus, this court held that reliance by Person's on its foreign use in Japan could not support its priority claim because foreign use had "no effect on U.S. commerce and cannot form the basis for a holding that [Person's] has priority here."

*Meenaxi Enter., Inc. v. Coca-Cola Co.,* 38 F.4th 1067, 1074 (Fed. Cir. 2022) (internal citation omitted).

[3] The Lanham Act incorporates the territorial premise of trademark law by mandating that "registration of a foreign trademark in the United States 'shall be independent of the registration in the country of origin' and that the rights of that mark in the United States are governed by

9

Plaintiff does not meaningfully contest that it was not the first to use or register the PASTA FASTA mark in the United States. Accordingly, its claim under § 43 is foreclosed unless it can show an exception to the rule. In an effort to preserve its claim, Plaintiff relies on dicta from the *Person's Co.*, decision where the Federal Circuit stated,

> [a]s the Board noted below, Christman's prior use in U.S. commerce cannot be discounted solely because he was aware of appellant's use of the mark in Japan. While adoption of a mark with knowledge of a prior actual *user* in U.S. commerce may give rise to cognizable equities as between the parties, no such equities may be based upon knowledge of a similar mark's existence or on a problematical intent to use such a similar mark in the future. Knowledge of a foreign use does not preclude good faith adoption and use in the United States. While there is some case law supporting a finding of bad faith where (1) the foreign mark is famous here or (2) the use is a nominal one made solely to block the prior foreign user's planned expansion into the United States . . .

*Person's Co.,* 900 F.2d at 1570 (internal citation omitted).

In this case, Plaintiff does not argue that its foreign mark is famous in the United States. Instead, Plaintiff emphasizes that, in late 2022 and into early 2023, it took steps to enter the United States *before* Defendant registered and started using the related mark(s) in this country. However, Plaintiff did not identify any authoritative case law that has applied the bad faith exception identified in *Person's Co.* to a claim under § 43(a). Moreover, Plaintiff's Complaint is devoid of facts to plausibly show that Defendant was aware of Plaintiff's actions taken in anticipation of its entry into the United States market. For example, there are no facts to suggest that Defendant was aware of discussions between Plaintiff and Rron and Ahmed Kurtolli in late 2022. *See* Compl., ¶ 223. Furthermore, while Plaintiff references a series of LLC name changes in early 2023 by their franchisee, which culminated with the adoption of the PASTA FASTA

---

domestic law, § 1126(f)." *Abitron Austria GmbH*, 600 U.S. at 426–27.

moniker and its concomitant filing with the Illinois Secretary of State, Plaintiff does not advance any facts to suggest when, why, or how Defendant would have searched the Illinois Secretary of State website to uncover these filings. *See* Compl., ¶¶ 24-25.[4]

In sum, Plaintiff's Complaint does not contain factual allegations sufficient to plausibly suggest that Defendant acted with the intent to block or interfere with Plaintiff's planned expansion into the United States. Consequently, the pleading does not satisfy the Rule 8 standard. *Iqbal*, 556 U.S. at 683 ("complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind").[5]

b)  <u>Section 44</u>

In lieu of, or in addition to § 43, Plaintiff emphasizes that it first registered the mark abroad, and, therefore, it is entitled to protection under § 44 of the Landham Act, 15 U.S.C. §§ 1126(g) and (h). The former section provides that, "[t]rade names or commercial names of persons described in subsection (b) of this section shall be protected without the obligation of filing or registration whether or not they form parts of marks." 15 U.S.C. § 1126(g). The latter provision reads,

> [a]ny person designated in subsection (b) of this section as entitled to the benefits and subject to the provisions of this chapter shall be entitled to effective protection against unfair competition, and the remedies provided in this chapter

---

[4] Later in the Complaint, Plaintiff alleges that "Defendant was aware of the Plaintiff's intended entry into the United States market . . ." Compl., ¶ 73. However, the foregoing statement is conclusory allegation that the Court cannot credit. *Iqbal*, 556 U.S. at 686.

[5] Citing pre-*Twombly* and *Iqbal* case law, Plaintiff argues that the merits of the case should not be resolved at the pleading stage. *See* Pl. Opp. Memo., ¶¶ 20-22, 23. However, dispositive issues of law may be resolved via Rule 12(b)(6) motion. *See Neitzke*, 490 U.S. at 326-327. Moreover, in the wake of *Twombly* and *Iqbal*, courts routinely dismiss cases at the Rule 12(b)(6) stage where plaintiffs fail to allege facts to support the elements of their claims. *See, e.g.*, *Iqbal*, 556 U.S. at 683

>for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition.

15 U.S.C.A. § 1126(h). Both provisions refer back to subsection (b):

>[a]ny person whose country of origin is a party to any convention or treaty relating to trademarks, trade or commercial names, or the repression of unfair competition, to which the United States is also a party, or extends reciprocal rights to nationals of the United States by law, shall be entitled to the benefits of this section under the conditions expressed herein to the extent necessary to give effect to any provision of such convention, treaty or reciprocal law, in addition to the rights to which any owner of a mark is otherwise entitled by this chapter.

15 U.S.C.A. § 1126(b).

To be sure, courts have recognized that § 44 of the Lanham Act incorporates provisions governing unfair competition set forth in the Paris Convention for the Protection of Industrial Property (the "Paris Convention"), which ensures that "foreign nationals should be given the same treatment in each of the member countries as that country makes available to its own citizens" as to trademark and related rights. *See Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1277 (11th Cir. 2001) (citation omitted)[6] and *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1099 (9th Cir. 2004). However, courts consistently emphasize that the Paris Convention, as incorporated by the Lanham Act, requires only "national treatment," which means that "foreign nationals should be given the same treatment in each of the member countries as that country makes available to its own citizens." *Int'l Cafe, S.A.L.*, 252 F.3d at 1278 (citation omitted); *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 484 (2d Cir. 2005) (same); *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1099 (9th

---

[6] The Paris Convention also sought to create uniformity by obligating each member nation "to assure to nationals of countries of the Union an effective protection against unfair competition." *Id*. (citation omitted).

12

Cir. 2004).

In short, "the Paris Convention, as incorporated by section 44 of the Lanham Act, creates no new cause of action for unfair competition. Any cause of action based on unfair competition must be grounded in the substantive provisions of the Lanham Act." *Int'l Cafe, S.A.L.*, 252 F.3d at 1278. Stated differently, a plaintiff simply cannot maintain a separate claim for unfair competition under the Paris Convention and §§ 44(b) and (h) of the Lanham Act. *Empresa Cubana del Tabaco*, 399 F.3d at 485. Rather, a claim for unfair competition must be brought under § 43(a) or state law. *Id*.

Accordingly, the Court finds that Plaintiff's Complaint fails to state a claim for relief under the Lanham Act.

## II.     State Law Claims

### a)     Louisiana Unfair Trade Practices Act

Plaintiff contends that Defendant violated the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), L<small>A</small>. R.S. § 51:1401, *et seq.,* which forbids "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . ." L<small>A</small>. R.S. § 51:1405. Furthermore, the "LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *Cheramie Services, Inc. v. Shell Deepwater Prod., Inc.*, 35 So. 3d 1053, 1057 (La. 2010). There is no limitation on those who may assert a LUTPA cause of action. *Id*.

"Louisiana courts determine what is a LUTPA violation on a case-by-case basis." *Quality Envtl. Processes, Inc v. I.P. Petroleum Co., Inc.*, 144 So. 3d 1011, 1025 (La. 2014) (quoted

13

source omitted). To recover under the LUTPA, a plaintiff must show that "the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* (citation omitted). Thus, the range of prohibited practices under the LUTPA is extremely narrow, as "only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned . . ." *Cheramie Services, Inc.*, 35 So.3d at 1060.

Applying the foregoing authority here, the Court already has determined that Plaintiff's Complaint fails to allege facts to support the inference that Defendant used and registered the same or similar mark to block Plaintiff's planned entry into the United States. Furthermore, given the bedrock principle that, "a trademark is recognized as having a separate existence in each sovereign territory in which it is registered . . ." the Court discerns no grounds to characterize Defendant's conduct as "egregious," which is necessary to support a claim under the LUTPA.[7] *See Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008) (requirements for a claim under the LUTPA mirror those of the Lanham Act); *Louisiana Athletics Down on the Bayou, L.L.C. v. Bayou Bowl Ass'n*, Civ Action No. 11-303, 2013 WL 2102354, at *11 (M.D. La. May 14, 2013) (because requirements of the LUTPA mirror those of the Lanham Act, the court's resolution of plaintiff's claim under the Lanham Act compelled the same result as to the LUTPA claim); *Romac Envtl. Servs. LLC v. Wildcat Fluids LLC*, Civ. Action No. 20-0581, 2023 WL 6557899, at *3 (W.D. La. Sept. 18, 2023), *R&R adopted,* 2024 WL 897854 (W.D. La. Mar. 1, 2024) (LUTPA claims

---

[7] It is not even clear that the LUTPA applies in this case where the alleged injury occurs elsewhere. *See* La. Civ. Code Arts. 3542-3543 (Conflicts of Laws provisions).

cannot rest upon permissible business practices); *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 n.7 (5th Cir.2010) (analysis of plaintiff's claims under the Lanham Act is dispositive of the corresponding claims for trademark infringement and unfair competition under Texas law, as well).

Accordingly, the Court finds that Plaintiff fails to state a claim for relief under the LUTPA.

b) <u>Unjust Enrichment</u>

Plaintiff also asserted a claim against Defendant for unjust enrichment under Louisiana law. (Compl., ¶¶ 99-108). The Louisiana Civil Code provides that,

> [a] person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule . . .

LA. CIV. CODE ART. 2298.

The Louisiana Supreme Court has endorsed five requirements for an unjust enrichment claim:

> (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of "justification" or "cause" for the enrichment and impoverishment; and (5) there must be no other remedy at law available to plaintiff.

*Carriere v. Bank of Louisiana*, 702 So.2d 648, 671 (La. 1996), *on reh'g* (Nov. 3, 1997); *see also Shaw v. Restoration Hardware, Inc.*, 93 F.4th 284, 291 (5th Cir. 2024).

It is manifest, however, that, "[n]ot every unjust enrichment warrants usage of equity. Courts may resort to equity only in cases of unjust enrichment for which there is no justification in law or contract." *City of New Orleans v. BellSouth Telecommunications, Inc.*, 690 F.3d 312,

326 (5th Cir. 2012) (quoted source omitted). Further, "[e]nrichment has legal justification when it flows from the proper application of a rule of law or contractual provision; it must not perpetuate a fraud on the law." *Caldwell Wholesale Co., Inc. v. Cent. Oil & Supply Corp.*, 761 So.2d 684, 689 (La. App. 2d Cir. 2000), *as amended on reh'g* (June 28, 2000) (internal quotation marks omitted). In other words, where, as already determined here, a defendant's conduct, albeit distasteful, did not violate applicable law, an otherwise unsuccessful plaintiff cannot rely on unjust enrichment as a basis to circumvent that result.

Relatedly, Plaintiff's allegations do not suffice to show an impoverishment, which occurs "only when the factual circumstances show that the impoverishment was not a result of the plaintiff['s] own fault or negligence or was not undertaken at [its] own risk." *Dorsey v. N. Life Ins. Co.,* CIV.A. 04-0342, 2005 WL 2036738, at *23 (E.D. La. Aug. 15, 2005) (citations omitted). "The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Walters v. MedSouth Record Mgmt., LLC*, 38 So.3d 243, 244 (La. 2010).

Here, Plaintiff had available remedies under the Lanham Act and the LUTPA *if* it had timely registered and/or used its mark in the United States. *See* discussion, *supra*. However, Plaintiff did not do so, and, thus, cannot claim the impoverishment element of a claim for unjust enrichment. *See Jim Walter Homes, Inc. v. Jessen*, 732 So.2d 699, 706 (La. App. 3d Cir. 1999) (holding that unjust enrichment remedy was unavailable where plaintiff previously failed to take advantage of other potential remedies such as, recording a security interest, filing a lien or attaching the property, and/or filing a complaint with the bankruptcy court).

Accordingly, the Court finds that Plaintiff fails to state a claim for relief for unjust

enrichment.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 20] filed by Defendant Fasta Pasta, L.L.C. be GRANTED, and that Plaintiff's Complaint be DISMISSED WITHOUT PREJUDICE.[8]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

---

[8] The Fifth Circuit recently held that it is standard practice for the initial dismissal pursuant to a Rule 12(b)(6) motion to be without prejudice, unless the facts are so infirm as to make any attempts at cure futile. *See McLemore v. Lumen Techs., Inc.*, No. 25-30264, 2026 WL 252698, at *1 (5th Cir. Jan. 30, 2026). Here, the operative pleading is Plaintiff's original complaint, and the Court is unable to conclude, in a vacuum, that any attempt to cure the presently insufficient allegations would prove futile. Accordingly, the recommended dismissal is without prejudice.

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 24th day of February, 2026.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE